[35]
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY


_____
                                   :
JAMES GEORGE DOURIS,               :      Civ. No. 10-2650
                                   :
                                   :
          Plaintiff,               :
                                   :
     v.                            :                    OPINION
                                   :
HOPEWELL TOWNSHIP,                 :
                                   :
          Defendant.               :
                                   :
_____        :

**WOLFSON, United States District Judge:**

    Presently before the Court is a Motion to Enforce Settlement by Defendant Hopewell Township ("Hopewell" or "Defendant"). This matter arises out of a Complaint filed by Plaintiff James George Douris ("Plaintiff" or "Douris") alleging a violation of the Americans with Disabilities Act ("ADA"). In or around May 2011, the parties entered into settlement negotiations and, ultimately, filed a Stipulation of Dismissal with the Court. Subsequently, Plaintiff refused to sign the

Agreement and Release.  For the reasons that follow, Defendant's Motion to Enforce Settlement  will be granted.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On or around December 1, 2010, Plaintiff filed a First Amended Complaint against Hopewell alleging violations of the Americans with Disabilities Act.[1] Specifically, Plaintiff, who is disabled, alleged that Hopewell's "City Hall is not properly accessible due to lack of proper accessible route, parking, bathrooms, counter, doors, etc.," that the route to "municipal court is not accessible because of a lack of an accessible route," and that Hopewell "does not provide accessible routes, parking, and other services to its parks." Am. Compl. ¶ 4.  As a result, Plaintiff sought damages, injunctive relief, costs and fees.

Following the filing of the Amended Complaint, the parties engaged in settlement negotiations.  Indeed, in

---

[1] Plaintiff was represented by counsel from November 2010 through October 2011.

2

a series of emails in May 2011, counsel for Plaintiff represented to counsel for Defendant that Plaintiff agreed to both the injunctive and monetary relief offered by Defendant.  Harrison Cert., Exs. B, C.  Specifically, on May 9, 2011, counsel for Plaintiff advised counsel for Defendant that "[t]he plaintiff has agreed to the injunctive relief aspect of the case," and on May 12, 2011, counsel for Plaintiff advised counsel for Defendant that "the monetary demand is accepted."  Id., Ex. B.  Subsequently, in a letter dated May 16, 2011, counsel for Defendant notified Magistrate Judge Arpert that "the parties have settled this matter." (Dkt. 27).  Counsel for Plaintiff was copied on that letter.  Id.  As a result, on May 17, 2011, this Court entered an Order of Dismissal in this action.  Subsequently, on May 27, 2011, the parties filed a Joint Stipulation of Dismissal with Prejudice that was signed by counsel for all parties.  Specifically, counsel for Plaintiff signed this Dismissal on May 13, 2011, and counsel for Defendant signed on May 20, 2011.

Thereafter, on August 9, 2011, counsel for Defendant requested leave to file a motion to enforce the terms of a settlement agreement reached between the parties in May 2011.  Specifically, counsel for Defendant advised the Court that, "[t]hrough a series of emails in April and May of 2011, the Township extended an offer in the form of a detailed release, which it subsequently revised in response to input from plaintiff's counsel and which plaintiff's counsel subsequently accepted on behalf of his client. Plaintiff's counsel has since advised that his client had a change of heart and refused to sign the release, leaving the matter unresolved."  Harrison Letter (August 9, 2011)(Dkt. 31).  Judge Arpert granted leave to file the motion.  By letter dated August 10, 2011, counsel for Plaintiff advised the Court that Plaintiff has "declined to sign the release though he is pleased with the settlement terms[,] he is concerned because he would not be able to sue the law firm and the town for threats made pursuant to Federal Law 11 which he believes is a violation of the Civil RICO and Clayton

4

Acts." Brady letter (August 8, 2011)[2]. On August 16, 2011, Defendants filed a Motion to Enforce the Settlement filed with this Court.

## II. DISCUSSION

Construction and enforcement of settlement agreements is governed by state law. Excelsior Ins.

---

[2]The language of the Release provides, in relevant part: "This Release releases all claims, including those of which Douris is not aware, and those not mentioned in this Release that have accrued against Township by the date of this Release. This Release applies to claims resulting from anything that has happened up to now. While Douris releases all claims Douris has against Township, Douris specifically identifies the following claims to which this Release supplies: Any and all claims which were asserted or could have been asserted in the United States District Court for the District of New Jersey, action entitled James George Douris v. Township of Hopewell, Civil Case No. 3:10-cv-2650." Harrison Cert., Ex. B. In that regard, the Court notes that it is common practice in a settlement agreement and release for a plaintiff to release all claims against defendant as part of the consideration for settlement; however, a plaintiff is typically not barred from claims that arise after the date of settlement. See, e.g., 29 Williston on Contracts § 73:10 (4th Ed. 2011); 66 Am. Jur. 2d Release § 28 (2012); United Parcel Service of America, Inc. v. Chandler, Civ. No. 91-4336, 1993 WL 21070, at *5 (D.N.J. 1993).

5

Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348-49 (D.N.J.1996).  Under New Jersey state law, a "settlement between parties to a lawsuit is a contract like any other contract." Peskin v. Peskin, 638 A.2d 849, 856 (N.J.Super.Ct.App.Div.1994).  Settlements must be "voluntarily made and freely entered into."  Id. at 856-57 (citing Pascarella v.. Bruck, 462 A.2d 186 (N.J.Super.Ct.App.Div.1983)).  It is not necessary that a settlement be in writing, nor will an oral agreement necessarily be unenforceable because the parties contemplate a future writing to flesh out details. Excelsior, 975 F.Supp. at 349; see also Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir.1970).  A settlement can be enforced "notwithstanding the fact that a writing does not materialize because a party later reneges."  Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J.Super.Ct.App.Div.1993).  "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing." Promotion in Motion v. Kenny's Candy Co., No. 97-3512,

6

1999 U.S. Dist. LEXIS 22174, at *14-15 (D.N.J. Nov. 30, 1999), quoting Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3d Cir.1984). As a result,

> in the absence of fraud, misrepresentation or overreaching ..., in the absence of a showing that the [party seeking to set aside the settlement] was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the [settlement] is binding and that the [party] will be held to the terms of the bargain he willingly and knowingly entered.

Aponte v. Williard, 229 N.J.Super. 490, 494 (N.J.Super.Ct.App.Div.1989), citing Raroha v. Earle Finance Corp. Inc., 47 N.J. 229, 234 (N.J.Super.Ct.1966). Any ground for rescission must be established by clear and convincing evidence. Borough of Haledon v. Borough of North Haledon, 358 N.J.Super. 289, 305 (N.J.Super.Ct.App.Div.2003), quoting DeCaro v. DeCaro, 13 N.J. 36, 97 A.2d 658 (1953); see also Jennings v. Reed, 381 N.J.Super. 217, 227 (N.J.Super.Ct.App.Div.2005) ("the party seeking to set aside the settlement agreement has the burden of

7

proving his incapacity or incompetence to contract or other extraordinary circumstance sufficient to vitiate the agreement."); Seacoast Realty Co. v. W. Long Branch Borough (Monmouth County), 14 N.J.Tax 197, 201 (N.J.Tax.Ct.1994) (settlement agreements are contracts, and are "vacated only upon a showing by clear and convincing proof of compelling circumstances."), citing Nolan, 120 N.J. at 472, 577 A.2d 143.

In New Jersey, it is well-settled that "stipulations . . .made by attorneys when acting within the scope of their authority are enforceable against their clients." Jennings v. Reed, 885 A.2d 482, 490 (N.J.Super.Ct.App.Div.2005) (emphasis in original). In that regard, "an attorney for a private party may settle a lawsuit based on actual or apparent authority to do so. Actual authority may be either express or implied." Seacoast Realty, at 202-03, citing Newark Branch, N.A.A.C.P. v. West Orange Twp., 786 F.Supp. 408, 423 (D.N.J.1992); United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 73-74, 194 A.2d 730 (1963). "Under implied [actual] authority an agent is

8

authorized to do what he may reasonably infer the principal desires him to do in light of the principal's manifestations and facts as he knows or should know them when he acts." Lampley v. Davis Mach. Corp., 219 N.J.Super. 540, 548-49 (N.J.Super.Ct.App.Div.1987), citing Lewis v. Travelers Ins. Co., 51 N.J. 244, 251, 239 A.2d 4 (1968). As for apparent authority, it:

> must be created by words or conduct of the principal.... Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. Moreover, the third party's reliance must be reasonable.

Seacoast Realty, 14 N.J.Tax at 203, quoting Hallock v. State, 64 N.Y.2d 224 (N.Y.1984). "[S]ending an attorney to a settlement conference presumptively establishes that the attorney has authority to settle...." Seacoast Realty, 14 N.J.Tax at 204. "[A]pparent authority may even be found where the principal denies having granted authority to settle, but nevertheless

9

places the attorney in a position where 'a person of ordinary prudence ... is justified in presuming that such agent has authority to perform the particular act in question.' " Id. at 204-05, quoting United States Plywood, 41 N.J. at 74.

In the instant matter, Defendant argues that this Court should enforce the settlement entered into by the parties in May 2011. Specifically, Defendant contends that the parties reached a settlement agreement in May 2011 arising from Plaintiff's Complaint, that an Order of Dismissal was entered into by the Court on May 17, 2011, and that a Stipulation of Dismissal was signed by all counsel on May 31, 2011. As a result, Defendant contends that Plaintiff cannot now refuse to sign the Settlement Agreement and Release because he had a change of heart and wishes to sue Hopewell in the future. In response, Plaintiff argues that although he discussed the settlement with his attorney, at a later date, when he was presented with the "[t]erm[s] of the agreement," he learned that the agreement "will limit [his] rights, past current, future known or not known."

10

Douris Mot. at 1 (Dkt. 37). <u>Id.</u> As a result, Plaintiff opposes the enforcement of the Settlement Agreement.

Initially, the Court notes that not only does Plaintiff not allege that his attorney did not have authority to negotiate or settle the above-captioned matter on his behalf, but nothing in the record demonstrates that Plaintiff's attorney lacked that authority. Instead, Plaintiff admits that his attorney contacted him regarding the Settlement Agreement and that he received a copy of the Settlement on May 16, 2011. Pl's Mot. (November 16, 2011) at 1 (Dkt. 50). Moreover, despite the fact that Plaintiff saw the signed Settlement Agreement in May 2011, Plaintiff did not contact the Court, counsel or his adversary to let them know that he did not consent to the Settlement Agreement signed on his behalf. Indeed, in June 15, 2011, counsel for Defendant emailed Plaintiff's counsel to advise that he was "awaiting a signed settlement agreement." Harrison Cert., Ex. H. Thus, it was not until August 9, 2011, when Defendant filed a letter

11

with this Court noting that Plaintiff's counsel advised them that Plaintiff had a "change of heart" and has "refused to sign the release" that Defendants learned that Plaintiff did not consent to the Settlement. However, in light of Plaintiff's knowledge that his attorney was negotiating the settlement on his behalf, and in light of Plaintiff's apparent agreement to the injunctive and monetary relief offered by Defendant, as well as the communication of that assent to counsel for Defendant, the Court finds that counsel for Plaintiff had authority to enter the Settlement Agreement on behalf of Plaintiff.  Moreover, Plaintiff does not deny that he saw the signed agreement in May 2011, yet Plaintiff made no effort to inform counsel or this Court that he did not, in fact, consent to the Agreement.  Thus,  in the absence of  "fraud or other compelling circumstances" that would compel this Court to vacate a final settlement, the Court will grant Defendant's Motion to Enforce the Settlement Agreement. Nolan, 120 N.J. at 472 (citing  Pascarella, 190 N.J.Super. at 125).

12

## III.    CONCLUSION

Based on the foregoing, the Court will grant Defendant's Motion to Enforce the Settlement Agreement.

Dated: February 14, 2012

/s/ Freda L. Wolfson

Freda L. Wolfson, U.S.D.J.